**Roque De La FUENTE II, Petitioner,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Respondent.**

No. 04–71027.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 2005.

Decided Nov. 29, 2005.

Michael H. Fish, Esq., Niddrie & Fish, LLP, San Diego, CA, for Petitioner.

Robert E. Feldman, Esq., Thomas L. Holzman, Esq., Federal Deposit Insurance Corporation Legal Division, Washington, DC, for Respondent.

Before: FERNANDEZ and BERZON, Circuit Judges, and PANNER,* Senior District Judge.

MEMORANDUM **

Roque De La Fuente II was removed from his position as a bank director and

* The Honorable Owen M. Panner, Senior United States District Judge for the District of Oregon, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

permanently banned from the banking industry by the Federal Deposit Insurance Corporation pursuant to section 8(e) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e). The FDIC determined that De La Fuente violated Regulation O, 12 C.F.R. § 215.1–13, and Section 23A of the Federal Reserve Act, 12 U.S.C. § 371c, and engaged in transactions involving unsafe and unsound banking practices. On petition for review, we upheld most of the regulatory violations, reversed the statutory violations, and remanded to the FDIC to decide, in light of the remaining violations, whether a life-time ban was justified. *See De La Fuente v. Federal Deposit Ins. Co.,* 332 F.3d 1208 (9th Cir.2003). On remand, the FDIC reimposed the sanction. We conclude the FDIC's decision was neither arbitrary nor capricious and not an abuse of discretion. *See Kim v. Office of Thrift Supervision,* 40 F.3d 1050, 1052–53 (9th Cir.1994) (noting standard of review). Accordingly, we deny the petition for review.

## DISCUSSION

Our prior decision established that De La Fuente violated Regulation O and engaged in two loan-related transactions that constituted unsafe and unsound banking practices. Although De La Fuente "does not contend the violations themselves can be reversed," he claims the FDIC on remand ignored his arguments that some of the loans at issue were profitable, that none put the bank at risk, and the bank suffered no loss on the loan related transactions. He contends the FDIC should have considered these arguments and concluded that he lacked the requisite "culpability" for purposes of imposing the permanent ban.

■ We do not agree with De La Fuente that the FDIC failed to consider his arguments. The FDIC stated that "each of the ... arguments offered by [De La Fuente] in favor of mitigation is ... unpersuasive and can be dismissed summarily." For example, the FDIC addressed De La Fuente's claim that he received "only minimal benefits as a result of the violations." It noted that, "regardless of how much or how little he personally profited, [De La Fuente], by placing himself above the law, created an environment where he was in the advantageous but improper position of having ready funds at his disposal for himself and his related entities." The FDIC also reviewed De La Fuente's claim that "many of the transactions in question ... ultimately ... benefited the bank." The FDIC reasoned that De La Fuente's claim "is unpersuasive for purposes of this analysis because ... the fact that he was able to obtain loans to his related interests without regard to regulatory limitations was enough." Finally, the FDIC rejected De La Fuente's claim that he committed "merely minor technical infractions" by noting that his conduct was deliberate and threatened the Bank and its depositors. Clearly, the FDIC did not ignore De La Fuente's arguments.

■ We also do not agree with De La Fuente that the FDIC abused its discretion by reimposing the permanent ban. First, as we previously noted, "De La Fuente's actions evidenced personal dishonesty," he "acted untruthfully, and in violation of his fiduciary duty," and "his conduct constitutes willful and continuing disregard for the safety and soundness of FIB." *De la Fuente,* 332 F.3d at 1223. Although we remanded, we also said that "[w]e cannot help but note that De La Fuente's use of FIB as his personal piggy bank was in shocking disregard of sound banking practices and the law to the detriment of depositors, shareholders, and the public." *Id.* at 1226–27. Second, the FDIC carefully reconsidered De La

Fuente's actions and concluded that "his conduct was deliberate and unremitting." The FDIC believed that "[i]n view of [De La Fuente's] continuing misconduct and, in particular, his purposeful dishonesty, . . . [De La Fuente] must be permanently barred from the banking industry." The FDIC reasoned that "[d]eclining to issue an order of prohibition or limiting it in any manner" weakens the FDIC's ability to protect the public interest "by lessening the deterrent effect of [its] enforcement powers." We do not disagree with this reasoning and we therefore conclude the FDIC's decision to impose a permanent ban pursuant to its authority under section 8(e) was not an abuse of discretion.

**PETITION FOR REVIEW DENIED.**